IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIAjk
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:20-cr-209 |
| | ) | |
| MICHAEL BEATTY, | ) | Hon. Claude M. Hilton |
| | ) | |
| Defendant. | ) | Hearing Date: March 5, 2021 |

## United States' Sentencing Position

The United States of America, through undersigned counsel and in accord with 18 U.S.C. § 3553(a) and the U.S. Sentencing Commission Guidelines Manual ("Guidelines"), hereby provides its position with respect to sentencing for defendant Michael Beatty. The United States requests that this Court adopt the findings of the Pre-Sentence Investigation Report ("PSR"), which indicates that the appropriate Guidelines range is 30-37 months with respect to incarceration.[1] Based on that advisory Guidelines range and the § 3553(a) factors, a sentence of incarceration of 30 months is sufficient, but not greater than necessary, to account for each of the § 3553(a) factors in this case.

In particular, a sentence of 30 months appropriately captures the seriousness of the defendant's repeated decisions to facilitate the payment of kickbacks for expensive compound medications that were billed to TRICARE, a federal health care program. Moreover, a sentence of 30 months is necessary to provide general deterrence of fraud schemes, like this one, which are

---

[1] Included in the PSR's advisory Guidelines calculations is a three-level decrease for acceptance of responsibility. In this respect, the United States agrees with the PSR that the defendant qualifies, pursuant to U.S.S.G. § 3E1.1(a), for a two-level reduction. In addition, the defendant timely notified the United States of his intention to plead guilty, thus permitting the United States to avoid preparing for trial and to allocate its resources more efficiently. Accordingly, the United States hereby moves, pursuant to § 3E1.1(b), to decrease the defendant's offense level by one additional level.

1

often hard to detect and can cause considerable losses to health care benefit programs, as well as beneficiaries[2]. At the same time, this recommendation takes into account that Beatty did not personally benefit from the profits of the scheme involving TRICARE patients and participated in this portion of the scheme for less than a year. Accordingly, the United States requests that this Court impose a sentence of 30 months, at the low end of the guidelines range, and a period of supervised release of three years. It is the Government's position that there is no restitution or forfeiture in this case.

I.      **Factual Background**[3]

From late spring or early summer of 2013 to in or around fall of 2014, defendant Michael Beatty ("Beatty"), a licensed pharmacist, engaged in a scheme to facilitate the payment of kickbacks to co-conspirators for referring prescriptions for expensive pharmaceutical drugs to Fallston Pharamcy ("Fallston"). Beatty owned Fallston until approximately December 2013, and then Beatty continued to work at Fallston after he sold the pharmacy until approximately fall of 2014, when Beatty was terminated by the new owners. Beatty and his co-conspirators Seth Myers ("Myers") and PHYSICIAN 1 actively worked to disguise the fraudulent business arrangement by entering into a sham contract for "marketing services" and agreed that the pharmacy would receive 50% of the gross proceeds from the compound prescriptions that PHYSICIAN 1, his affiliates, or other doctors recruited by PHYSICIAN 1 and Myers directed to the pharmacy.

As part of the conspiracy, Beatty developed potential compound formulas with the goal of finding the ingredients that the insurance companies would reimburse at the highest rates, and

---

[2] It is the Government's position here that there is no demonstrated loss to the TRICARE program or to patients.

[3] The PSR and the Statement of Facts signed by the defendant (Doc. No. 12) adequately set forth the offense conduct in this case.

Beatty advised PHYSICIAN 1 what medical conditions for which PHYSICIAN 1 could prescribe these medications. The goal of the conspirators was for PHYSICIAN 1 to diagnose his patients with conditions for which the insurance companies would reimburse these high cost medications. The conspirators knew that alternative medications were available at a lower cost to treat these conditions. Even after Beatty sold Fallston, Beatty continued to work closely with Myers and PHYSICIAN 1 to determine what prescriptions would generate the most revenue. Beatty and the co-conspirators specifically targeted TRICARE because TRICARE was paying high reimbursements for the ingredients in the compounded medications and because TRICARE only required beneficiaries to pay minimal co-payments for these compounds. As such, beneficiaries were less likely to complain about the co-payments or refuse to accept the medications.

In total, TRICARE paid approximately $344,280.62 to Fallston during the course of the conspiracy. The pharmacy profited approximately $295,792.03 for payments for the medications included in this scheme. After Beatty was approached by the Government, he agreed to speak with law enforcement and admitted to his participation in the fraud scheme and admitted his culpability. On September 29, 2020, Beatty pled guilty to one count of conspiracy to offer and pay health care kickbacks, in violation of 18 U.S.C. § 371.

## II.   Guidelines Calculation

As the Court is well aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Thus, at sentencing a court "must first calculate the Guidelines range." *Nelson v. United States*, 555 U.S. 350, 351 (2009). Here, the appropriate Guidelines range with respect to incarceration is 30-37 months. This includes a base offense level of 8, a 12-level enhancement based on the value of the improper benefit conferred being more than $250,000 but

$550,000 or less, and a 2-level enhancement based on the fact that defendant abused a position of public trust. It also includes a 3-level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty. The United States asks this Court to adopt the PSR's findings and advisory Guidelines range in full.

### III.    Section 3553(a) Factors

After calculating the Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to § 3553(a)'s enumerated factors, of particular pertinence here are the "nature and circumstances of the offense," "the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense," the need "to promote respect for the law," the need for the sentence "to afford adequate deterrence to criminal conduct" and the need to "provide restitution to any victims." § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(7). As explained below, based on those factors, a sentence at the low end of the guidelines range is warranted, appropriate, and reasonable.

> **A.    *A sentence of 30 months is appropriate based on the nature, circumstances, and seriousness of the offense.***

Here, Beatty's conduct involved paying and facilitating the payment of kickbacks for prescriptions billed by Fallston. While Beatty engaged in the portion of the scheme to defraud TRICARE for less than a year[4], the conspiracy relied upon Beatty's specialized knowledge about ingredients for these compound medications and about how to determine what health insurance

---

[4] It is worth noting that all payments made by TRICARE were made after Beatty sold the pharmacy, so the profits were received by the new owners of the pharmacy although Beatty facilitated the kickback scheme.

programs like TRICARE would reimburse. His knowledge and participation allowed the co-conspirators to take advantage of the fact that TRICARE would reimburse high amounts for these drugs even though lower cost alternatives were often available. In fact, Beatty's importance to the scheme is illustrated by the fact that Beatty initially agreed to split proceeds of the scheme 50/50 with Myers and PHYSICIAN 1, and this arrangement continued with the new owners of Fallston after Beatty sold the pharmacy. It is further demonstrated by the fact that when PHYSICIAN 1 and Myers no longer wanted to work with Fallston, they proposed opening a pharmacy on their own where Beatty would be the pharmacist. While PHYSICIAN 1 may have recruited Beatty to be a part of the conspiracy, the conspiracy's success was contingent on Beatty's participation. During the scheme TRICARE paid approximately $344,280.62 for these medications that were tainted by the kickbacks. It is impossible to determine what percentage of this money would not have been expended if the co-conspirators were more focused on the most appropriate medical treatments and less focused on their own profit. Accordingly, given the length, scope, and seriousness of the defendant's criminal conduct, a sentence of 30 months is warranted in this case.

> B. *A sentence of 30 months is appropriate in light of the defendant's personal history and characteristics.*

A sentence of 30 months is also appropriate in light of Beatty's personal history and characteristics. It is true that prior to this incident, Beatty has no known criminal convictions. However, Beatty held a position of public trust as a pharmacist and abused that trust by engaging in this scheme and allowing his decision-making and actions to be tainted by the unlawful kickbacks that were being paid. As a member of his profession, Beatty would have received specific training on the impermissibility of accepting kickbacks. Despite this fact, he allowed his decision-making to be clouded by greed while knowing that his actions were wrong and knowing how kickbacks harm doctors, patients, and health care benefits programs. Beatty is an intelligent,

capable individual who had the life experience to make lawful choices, but did not elect to do so in this instance. A sentence of 30 months is thus necessary to account properly for his personal history and characteristics.

> C. *A sentence of 30 months is appropriate to promote respect for the law and afford adequate general deterrence of similar schemes.*

The need for general deterrence also warrants a sentence of 30 months. General deterrence is important in any white-collar case, but is particularly important here when the payment and receipt of kickbacks could potentially result in patient harm. While there is no evidence that patient harm resulted out of the actions of the defendants in this case, when doctors and pharmacists are motivated by their own profit as opposed to the interests of their patients/customers, significant patient harm could occur.

Similarly, generally deterrence is an important factor for crimes, like Beatty's, that are difficult to detect. Health insurance benefit programs, like TRICARE, rely on doctors and pharmacists to make truthful representations about services being provided and reasons they are being provided. These programs do not have the resources to investigate and verify that providers are complying with all applicable laws and rules. The jobs of programs, like TRICARE, become even harder when individuals like the co-conspirators here, enter into sham arrangements to try to hide their true activities. A term of imprisonment of 30 months is thus necessary to send a message to other potential fraudulent actors that crimes like this one that could result in significant financial and patient harm will be met with an appropriate term of incarceration.

**IV. Restitution**

It is the Government's position in this case that there was not an actual loss to the TRICARE program because there is no evidence that the compound prescriptions were not prescribed by a physician or were not dispensed to the beneficiaries. In addition, while lower

6

cost medications were likely available for these patients, it is not definitive that the medications that were actually prescribed were not medically necessary for the patients. As such, it is the Government's position that no restitution is owed for this conduct. Similarly, the Government's position here is that Beatty did not specifically profit from this activity because the profits for the TRICARE prescriptions at issue were paid to Fallston after Beatty sold the pharmacy. As such, it is the Government's position that no forfeiture is owed in this case. It is the position of the Government that the Court should order Beatty to pay a moderate fine within the guidelines range in this case.

**V.     Conclusion**

For the reasons stated, the United States requests that this Court impose a term of incarceration of 30 months, as well as a period of supervised release of three years, along with an appropriate fine.

Respectfully submitted,

Raj Parekh
Acting United States Attorney


By: _____/s/_____
Monika Moore
Counsel for the United States
Assistant United States Attorneys
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: monika.moore@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

By: _____/s/_____
Monika Moore
Counsel for the United States
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: monika.moore@usdoj.gov