IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| v. | : | Criminal No.:  1:20CR00209-001 |
| | : | |
| | : | Honorable Claude M. Hilton |
| MICHAEL BEATTY, | : | |
| | : | Hearing Date:  March 5, 2021 |
| Defendant. | : | |
| _____ | : | |

## DEFENDANT'S POSITION ON SENTENCING

Mr. Michael Beatty, through his undersigned counsel, provides his position regarding the advisory sentencing guidelines range, the sentencing factors espoused in 18 U.S.C. § 3553(a), and his respectful request for a downward variance from the recommended guidelines.  Regarding the sentencing guidelines calculation, Mr. Beatty agrees with the PSR that "his total criminal history score is zero," and that "a criminal history score of zero establishes a criminal history category of I."[1]  He does not dispute that probation has correctly calculated his total offense level to be 19, resulting in an initial sentencing guidelines range of 30-37 months.

In significant mitigation, Michael Beatty has otherwise lived a conscientious and principled life, earning a college degree in 1989 from Dickinson College and a bachelor of science in pharmacy from the University of Maryland in 1995.  He owned his own

---

[1] PSR at 16, ¶ 75.

pharmacy for about 11 years, selling it in December 2013, and has since held good, leadership jobs in community pharmacies. He is the primary provider for his son Ethan, his partner Sarah, and her son Cal. He has mentored young pharmacy students, and currently volunteers for both administering COVID-19 vaccinations in Carroll County, Maryland and as a "Buddy" to military veterans in coordination with the federal Veterans Administration. On a personal level, he has shown himself to be a compassionate man, consistently kind and generous to others.

Despite his conduct in this case, he is a person of fundamental good character with no prior criminal record. Since withdrawing from this conspiracy in the fall of 2014, he has returned to the exemplary and ethical life he lived prior to the crimes at issue. In addition to a felony conviction and potential imprisonment, Mr. Beatty faces the punishment of potentially having his pharmacy license suspended, or losing it altogether. In additional mitigation, this kickback case appears to be outside the norm where the Government has "determined that no restitution is owed in this case."[2] In stark contrast to his two co-conspirators, Mr. Beatty's personal profit in this case was $7,370.64, less expenses.[3]

Finally, Mr. Beatty has fully accepted responsibility, and has expressed and feels sincere remorse. Taking all of these factors in mitigation and the Defendant's prompt

_____

[2] PSR at 5, ¶ 7, note 2.

[3] *See* note 13, *infra*.

plea and cooperation with the Government, it is respectfully suggested that a variance below the guidelines is appropriate, and considering Mr. Beatty's recently confirmed diagnosis of an elevated coronary calcium score, which places him at increased risk of severe illness from COVID-19, as well as his current volunteering in COVID-19 vaccinations and the Veterans Administration, a period of home incarceration with an employment and volunteering exception is warranted.

## I.    RELEVANT FACTUAL HISTORY

While Mike initially believed that Physician 1's and Mr. Meyers' organization was legitimate, he soon came to understand that it was not.   "[PHYSICIAN 1] and MYERS created a sham business arrangement in order to promote the appearance that FALLSTON PHARMACY was paying for legitimate services …."[4]   "BEATTY came to understand this agreement to mean that he would remit to MYERS 50% of the gross proceeds of all prescriptions directed to the pharmacy by [PHYSICIAN 1], and of [PHYSICIAN 1's] affiliates, and any other doctors designated by MYERS."[5] "Eventually, during the conspiracy, BEATTY understood that the agreement was for the referral of prescriptions and for kickbacks paid for these prescriptions."[6]   He recognizes and will forever regret the poor decision that he made to continue in the conspiracy.   The combination of a deteriorating marriage and a struggling small business made Mike the

---

[4] PSR at 8, ¶ 24.

[5] PSR at 8, ¶ 25.

[6] PSR at 8, ¶ 26.

ideal target for Physician 1's proposition, the struggling business being the primary attraction from Physician 1's perspective, as he would have been all-too aware of the difficulties of running a small community pharmacy and competing with the large pharmacy chains.

Mike resolved to leave and in fact left the conspiracy in 2014 when it was still operating and years before becoming aware of this investigation, or of any indictments or pleas.  In the following six and one-half (6 1/2) years, he has made great strides in improving his life, and rededicating himself to his profession.  As detailed below, he has worked hard to change himself into a better person, pharmacist, partner, and father.

Upon leaving the conspiracy at issue, Mike recommitted himself to being the devoted community pharmacist he has always been, which coincided with his personal transformation discussed below.  In early 2015, he obtained employment with Halethorpe Pharmacy in Halethorpe, Maryland as a pharmacist, and was quickly promoted to lead pharmacist, a position in which he remained for 4 1/2 years until Halethorpe Pharmacy was sold to Rite Aid in April 2019, essentially closing the pharmacy.[7]  Mike next took employment with AME Pharmacy in Catonsville, Maryland from July 2019 to the present.[8]  Mike was also employed for just over a year as a part-time pharmacist with

---

[7] PSR at 19, ¶ 98.

[8] PSR at 18, ¶ 96.

4

Giant Foods, but regrettably, Giant chose to terminate his employment upon Mike notifying them of this crime.[9]

In the past six (6) months, Mike has voluntarily applied for and been accepted as a "Buddy" with the federal Veterans Administration.  Mike specifically researched and pursued this role in which he interacts with and supports United States military veterans, the very persons directly harmed by his offense.  In addition, Mike has looked upon his training as an experienced pharmacist as an opportunity to contribute to the community in special ways during the coronavirus pandemic.  He has administered vaccine to first responders, seniors, and educators under the "Maryland Responds" Program, which is a volunteer program to aid the community in times of emergency or disaster.  Under that program, he has been deployed regularly and as needed to various schools, senior centers, and vaccination or testing sites in Carroll County, Maryland.[10]

## II.    18 U.S.C. 3553 SENTENCING FACTORS SUPPORT A NON-CUSTODIAL SENTENCE

Section 3553(a) requires district courts to consider the following factors in imposing sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need to provide restitution to any victim(s).

---

[9] PSR at 18, ¶ 97.

[10] *See* Defendant's statement of acceptance, attached hereto as Exhibit 1.

18 U.S.C. § 3553(a)(1)-(7). The end result of the analysis must be a sentence that is "sufficient, but not greater than necessary" to comply with four purposes of federal sentencing, i.e., the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). For the reasons that follow, the requested sentence is "sufficient but not greater than necessary" to serve the purposes of federal sentencing under the circumstances of this case.

### A.     Mr. Beatty's Immediate and Full Cooperation with the Government.

Following the initial contact of Mr. Beatty by federal agents in May 2019 and then shortly thereafter by the United States' Attorney, Mr. Beatty agreed to cooperate with the Government within approximately fourteen (14) days of first contact.  In that interim, Mr. Beatty consulted with his undersigned counsel and another attorney on numerous occasions, there were multiple conversations and exchanges with the United States Attorneys, and Mr. Beatty quickly chose to cooperate with the Government.[11]  To make that decision in less time would have been imprudent and unwise.  Mr. Beatty has been an active and willing cooperative witness with the government since early June 2019.  As evidence of his remorse and an eagerness to rectify his wrongdoing, he has expressed to

---

[11] PSR at 14, ¶ 5.

the Assistant United States Attorneys a willingness to testify in the event that becomes
necessary.

**B.     Mr. Beatty's Limited Involvement With and Minimal Profiting
          From the Illegal Activity.**

The entity which owned Fallston Pharmacy under Mr. Beatty's time of ownership,

M&M Beatty LLC, issued exactly three (3) checks totaling Seven Thousand Three

Hundred Seventy Dollars and Sixty Four Cents ($7,370.64) in kickback payments to

Laboratory RX, the entity owned by Physician 1 and Seth Myers.  The pharmacy was

sold to another entity, SAI Pharma LLC, on or about December 13, 2013 (the February

18, 2014 check was for prescriptions filled prior to the sale).  As a requirement of the

Purchase Agreement for the pharmacy and at the new owners' request, Mr. Beatty was

contractually obligated to work as a pharmacist for the new owners of Fallston Pharmacy

for a period of one (1) year.  He was paid a typical hourly wage for this employment as a

pharmacist, and shared in none of the financial benefits of the illegal activity that

continued after the December 2013 sale of the pharmacy.

From the time of the sale of Fallston Pharmacy in mid-December 2013 into the

summer of 2014, the new owners of Fallston Pharmacy paid a total of Two Hundred

Twenty-Three Thousand Four Hundred Sixty-Two Dollars and One Cent ($223,462.01)

to Laboratory RX.[12]  As noted, Mr. Beatty paid just Seven Thousand Three Hundred

Seventy Dollars and Sixty-Four Cents ($7,370.64) to Laboratory RX, in three (3)

---

[12] PSR at 12, ¶ 45.

payments:  $5,075.88 on or about September 23, 2013, $555.33 on or about December 10, 2013, and $1,739.43 on or about February 18, 2014 (the February 2014 payment was for December 2013 compounding, prior to the sale).[13]  These amounts and figures represent the total profit to the pharmacy for the compounding medications created and sold under the conspiracy and over the relevant period of time in this case.  Therefore, Mr. Beatty's benefit or "profit" from the illegal activities of $7,370.64 represents less than 3.3% of the total profits to Fallston Pharmacy over the life of the conspiracy.  His limited involvement resulted in minimal profits, and even less in personal gain or benefit.  As the amount and degree of monies at issue are a significant factor in the Federal Sentencing Guidelines, the increased profiting of the subsequent owners to the extent of more than 30 times that of Mr. Beatty should be strongly considered by this Court to lessen and mitigate Mr. Beatty's sentence.  Had the conspiracy ended when Mr. Beatty sold the pharmacy in December 2013 or shortly thereafter, the total "value of the improper benefit" would have been approximately $7,370.64, and under the guidelines, his total offense level and the corresponding sentencing guideline range would have been reduced correspondingly.[14]

In addition, Mr. Beatty withdrew from the conspiracy voluntarily, despite fear of reprisal from his co-conspirators, particularly Physician 1.  Pursuant to the Statement of

---

[13] PSR at 9, ¶ 29.

[14] It should be noted that the $7,370.64 figure is not true "profit," as there were expenses in formulating the compounded medicines, such as labor and the cost of the raw materials.  Using a very modest figure of 30% costs, the pharmacy and Mr. Beatty as owner realized a benefit closer to $5,159.49.  That figure would have further reduced the offense level and the corresponding sentencing guideline range.

Facts, "… because of the prior kickback agreement and the amount of money involved, BEATTY grew concerned about the project and started delaying tasks he was supposed to accomplish, [PHYSICIAN 1] and MYERS became frustrated with BEATTY and they ultimately parted ways with BEATTY."[15]  Mr. Beatty intentionally undertook these delay tactics in an effort to bring his involvement in the conspiracy to a close, which was in fact accomplished.  Mr. Beatty has had no contact with any of his co-conspirators since the fall of 2014.

Finally, the actions at issue and before this court constituting the illegal kickbacks occurred more than six and one-half (6 1/2) years ago.  Mr. Beatty had no criminal activity prior to this, and has no criminal history of any kind since the actions contained herein, but for a minor charge, dismissed without leave by the district attorney at age 20 in North Carolina during his college days.[16]  Outside of the significant yet brief failing of conscience and good judgment constituting this crime, Mr. Beatty has led an exemplary life, and particularly as a professional, taking pride in his commitment to his work and giving generously of his time to his patients.

C.   **From the Inception of the Conspiracy, Mr. Beatty was Targeted by the Co-Conspirators.**

In the Statement of Facts executed by Mr. Beatty and the Assistant United States Attorneys, the parties agreed that Physician 1 and Myers targeted Mr. Beatty for his

---

[15] PSR at 13, ¶ 49.

[16] PSR at 16, ¶ 78.

compounding facilities and experience.  Physician 1 met Mike when their 9 year-old sons played on the same little league team that Mike was coaching.  Pursuant to the Statement of Facts, "BEATTY was approached by [PHYSICIAN 1], …. [PHYSICIAN 1] suggested that BEATTY and [PHYSICIAN 1] do business together.  [PHYSICIAN 1] indicated that he had seen on FALLSTON PHARMACY's Web site that FALLSTON PHARMACY produced compound drugs.  [PHYSICIAN 1] followed up with an email on or about June 13, 2013 in which [PHYSICIAN 1] noted that BEATTY had been in touch with [PHYSICIAN 1's] business associate, SETH MYERS ("MYERS")."[17]  At the time, Mr. Beatty was compounding to a relatively modest degree, providing unique and specific compounded medications to patients in need.

The conspiracy in which Mr. Beatty participated for a little over a year was conceived, devised, and initiated at some point prior to Mike's involvement or knowledge, and continued long after his withdrawal.  While he actively participated in the conspiracy for the year at issue, he was not a creator or "ringleader," nor "does it appear that Michael Beatty exercised any leadership role in this conspiracy."[18]  This fact is evidenced by the Government's concession that Mr. Beatty pay no forfeiture or restitution in this case, in stark contrast to co-conspirator Seth Myers, who has pled and agreed to a money judgment forfeiture of $428,124.99[19] and restitution of

---

[17] PSR at 7, ¶ 22.

[18] PSR at 14, ¶ 58.

[19] Plea Agreement, *U.S. v. Seth Myers,* 1:20-cr-235, Doc. 11 at 10, ¶ 15.

$4,832,591.36.[20]  Once he removed himself from the kickback arrangement, Mr. Beatty resumed his proper role as a lead pharmacist in a neighborhood, community pharmacy.

**D.      Mr. Beatty is a Father, an Accomplished Pharmacist, a Respected Member of His Community, and Poses No Future Risk to Society.**

Michael Beatty was born on June 2, 1967 in Somerset, New Jersey, and grew up in Bound Brook, a community in central New Jersey with a "small town" atmosphere.  His parents, James and Irene Beatty, were loving and supportive parents.  His father was a community pharmacist who owned his own pharmacy, Union Avenue Pharmacy in Bound Brook, and inspired Mike's pursuit of and passion for the pharmacy profession, and all the good that it can do.  His mother was a proud homemaker and the retail manager at the pharmacy owned by his father.  By all accounts, Mike was a happy child, friendly and engaging.  After six years of grade school at the Smalley School, Mike attended Bound Brook High School for both middle school and high school, where he participated and competed in sports in each of his years there, playing football, basketball, baseball, and running cross country.  He excelled in academics throughout his educational years, as a member of the National Honor Society in grade school and the Honor Roll in high school.  Mike has a younger brother, 52 year-old Dennis Beatty, who lives in Burlington, Vermont, and is a practicing physician, specializing in internal medicine.[21]  Mike has a true love and talent for music, and was in a band in high school

---

[20] *Id.* at 6, ¶ 8.

[21] PSR at 16, ¶ 81.

with his brother and friends, and continued that passion in college where he was the singer in a few different bands over his college years.  While many lose touch with friends from high school and college, Mike has consistently kept close contact with many friends from high school and college alike, as evidenced by the letters of support from two of his college friends and another friend of over 15 years.[22]

Following high school, Mike attended Dickinson College in Carlisle, Pennsylvania beginning in 1985 and graduating in 1989.  While at Dickinson, Mike met and began dating his future wife, Melissa, who was also interested in pursuing an education and career in pharmacy.  Following graduation, Mike and Melissa entered pharmacy school together at the University of Maryland School of Pharmacy, both graduating in 1995 with honors, namely Rho Chi, the honor society for high GPA and achievement in pharmacy school.

While in pharmacy school, the couple married at a beautiful outdoor ceremony in Baltimore, Maryland on July 16, 1993.  The couple had a child, Ethan Beatty, born on June 22, 2003, who they raised together in a caring and supportive household while working as owners and pharmacists at Fallston Pharmacy.  Due in part to the stress of owning and running the pharmacy together for 11 years, Mike and Melissa separated in 2016, and divorced amicably in 2017.  Mike and Melissa currently share custody of Ethan, with Melissa having primary custody and Mike having his son at his home every

---

[22] *See* letters of support from Brian Poole, Brendan Fox, and Nicholas Bershak, attached hereto as Exhibits 2, 3, and 4.

other weekend and one day each week, in addition to negotiated holidays and special occasions.  While the divorce of his parents was difficult emotionally for the 13 year-old Ethan, he has by all accounts grown into a fine, educated young man, who will be graduating from high school this spring and starting college this fall.  Mike and Ethan are extremely close, and continuation of this bond is critical to Ethan's well-being and development in the future.[23]

During the time of the events at issue in late 2013 into 2014 and the immediate years afterward, Mr. Beatty experienced great personal difficulties.  He was struggling with his marriage to Melissa and ultimately divorced.  He became depressed, had difficulty with alcohol dependence, and sought and received professional help.[24]  Due to the sale of the pharmacy at which he worked after leaving Fallston Pharmacy, his full-time job was eliminated in 2019, causing financial hardship.

Fortunately and with great pride, he has turned his life around.  He has put his troubles with alcohol behind him, and approximately three years ago, met Sarah Monroe, a woman with whom he has found happiness and support.  He has a rewarding, full-time job at AME Pharmacy, owned by Irina Herbst,[25] a small, privately owned community pharmacy, and his employer is fully aware and supportive of his situation, issuing a letter of support to this Court.  He is very concerned and has experienced great anxiety that a

---

[23] PSR at 17, ¶ 84.

[24] *See* letter of support from Dr. Marc Weinstein, attached hereto as Exhibit 5.

[25] *See* letter of support from Irina Herbst, attached hereto as Exhibit 6.

prison sentence will not only result in the loss of his job and possibly his pharmacist license, but also that it will have a substantial negative impact on the people he cares most about. He worries about the effect that a prison term will have on his son Ethan, his partner Sarah Monroe,[26] and Sarah's 7 year-old son Cal, to whom he proudly acts as a father figure. He is very thankful to have them in his life, and the thought that they would be harmed further by his absence if imprisoned strikes him with deep and sincere sorrow and remorse.

Mr. Beatty has committed his life's work to the pharmacy profession, and has worked in community pharmacy for 25 years. He has devoted himself fully to the communities that he has worked in, from his hometown of Bound Brook, New Jersey at his father's pharmacy, then in the Baltimore area where he ultimately bought and ran Fallston Pharmacy before selling it during the time of these shameful events. By working throughout his life in community pharmacy, Mike has had the opportunity to develop close professional and personal relationships with his patients. He has excelled in this role to the highest degree, as evidenced by the countless letters and thank you notes from his patients. In every job he has worked as an employee, he has been promoted to pharmacy manager or lead pharmacist. He has improved the health and well being of countless patients of all races, nationalities, and creeds in the communities in which he has worked.

---

[26] *See* letter of support from Sarah Monroe, attached hereto as Exhibit 7.

For approximately 20 years, he has volunteered and served as a preceptor, a mentor for pharmacy students, for both the University of Maryland and Notre Dame School of Pharmacy, and over the years has mentored hundreds of pharmacy students, some of whom have gone on to own their own pharmacy businesses.  His work as a preceptor was recognized and honored by being named Preceptor of the Year at the University of Maryland in 2011, and mentoring young students is another aspect of his pharmacy work in which he takes great pride.  He has served on the board of his local Hospice program to assist patients at end of life, and has consulted with senior patients in assisted living and nursing homes, including those among the community he harmed with his offense.

As noted in the PSR, in addition to suffering from hypertension and high cholesterol, Mike has been recently diagnosed with coronary artery calcification, which places him at a higher risk of having an adverse cardiovascular event in the next 3 to 5 years.[27]  Specifically, his physician, Dr. Scott C. Poulton, has stated that Mike "had a recent calcium score that was elevated.  This implies that he is at increased risk for cardiovascular disease.  Due to this and his age, he would be at high risk if he sustained a COVID 19 infection."[28]

---

[27] PSR at 18, ¶ 87.

[28] *See* letter from Dr. Scott C. Poulton, MD, attached hereto as Exhibit 8.

As a health worker on the frontlines administering vaccines, Mike has been recently vaccinated, but the emergence of COVID-19 variants,[29] the uncertain and varying efficacies of the vaccines, and the combination of hypertension, high blood pressure, and his recent diagnosis of coronary artery calcification nonetheless put him at increased risk if he contracts COVID-19.  It is fair to assume that Mike's chance of contracting the coronavirus will increase if he is in the custody of the Bureau of Prison. The BOP's problematic handling of the coronavirus has been widely documented. For example, the Washington Post published a concerning article about the "true" conditions in BOP facilities, which included interviews with inmates and jail officials. One inmate at a minimum-security satellite camp reported using the same *non-reusable* masks for *over four months* and that inmates are *prohibited* from using hand sanitizer. There is no shortage of similar articles.  The Governor of Virginia has directed and encouraged that, where appropriate, alternatives to incarceration be prioritized.[30]

It is well documented that viruses such as COVID-19 are very difficult to control in prison settings due to the confined spaces and the need for interaction between inmates and staff.  As a result, the Attorney General has issued a Memorandum to the BOP encouraging the transfer of inmates to home confinement where appropriate and many

---

[29] *See infra* at 17.

[30] *See Governor Northam Announces Additional Actions to Address COVID-19, Virginia Governor's website* (March 19, 2020) (announcing that he "is encouraging local criminal justice officials, including Commonwealth attorneys, defense attorneys, sheriffs, and other jail officials, to explore proactive measures to combat the spread of COVID-19 while ensuring public safety," which include measures like modifying sentences to reduce jail populations, diverting offenders from being admitted to jail, and using alternatives to incarceration, "*such as home detention with electronic monitoring....*")

states and judicial bodies, facing the same issue in their prison systems, have encouraged judges and prosecutors to consider home confinement and other alternatives to incarceration.

While the introduction of vaccines into the high-risk population has provided much needed optimism into COVID discussion, there remains a great deal of debate and skepticism regarding their efficacy for the individual vaccinated, how long the vaccines are effective, as well as whether the vaccine prevents spread of the virus to others.  Just over 21 Million people in the United States have received two doses of the vaccine, representing approximately just 6.5% of the U.S. population.[31]  The CDC currently reports that there are three identified "variants" of the virus that causes COVID-19 circulating globally: the United Kingdom, South African, and Brazilian variants.[32]  A fourth variant has been identified as originating here in the United States in both California and New York, labelled the "California" variant, which now accounts for more than 50% of cases in 44 California counties.  Vaccine producers Pfizer and Moderna have recently begun research and development into a new vaccines for variant strains of the COVID-19 virus, and testing of the current vaccines as to their efficacy against the ever-evolving variants.[33]  The Court should strongly consider and weigh these factors and the

---

[31] Centers for Disease Control and Prevention, COVID Data Tracker, report February 25, 2021 available at https://covid.cdc.gov/covid-data-tracker/#datatracker-home.

[32] Centers for Disease Control and Prevention, reported February 12, 2021 available at https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant.html.

[33] University of Minnesota, Center for Infectious Disease Research and Policy, report February 25, 2021 available at https://www.cidrap.umn.edu/news-perspective/2021/02/new-covid-19-variants-found-new-york-california

unnecessary risk to Mr. Beatty's health and to others, when considering imposition of a custodial sentence.

Mike poses no risk to the community in which he resides, works, and lives his life; in fact, quite the opposite. To remove Mike from that same community would be a net-negative to the community at large, particularly at a time when his service to that community is so very valuable. Of course, his value to his immediate family is immeasurable. But in addition, his willingness to share and volunteer his skills, experience, and time provide great assistance and value to the general community, and to remove him during such a critical time in our country, when his presence and commitment is most unique and beneficial, would leave the community at a loss.

## III.   **CONCLUSION**

For the foregoing reasons and any others that may appear relevant to the Court or that may develop at the sentencing hearing, a significant downward variance is appropriate in light of Mike's acceptance of responsibility, his deep and sincere remorse, his dedication to his friends, family, profession, and community, his long history of good character and integrity, his contribution to the community as a volunteer during this unprecedented pandemic, and his serious underlying cardiovascular health issues. A felony conviction is of significant consequence itself, and is likely to have a detrimental effect on Mike's pharmacy career. Mr. Beatty respectfully requests that this Honorable Court consider the imposition of a sentence of home incarceration and probation with an employment and volunteering exception.

Respectfully submitted,
MICHAEL BEATTY
By Counsel


_____/s/ David J. Carlin_____
David J. Carlin
30 E. Padonia Road, Suite 400
Timonium, MD  21093
Phone:  410-561-3090
Facsimile:  410-561-4305
carlindj@verizon.net



_____/s/ Joseph King_____
Joseph King
VA Bar # 65632
King, Campbell, Poretz, Pllc
108 N. Alfred Street
Alexandria, VA. 22314
Phone:  703-683-7070
Facsimile:  703-652-6010
jking@kingcampbell.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 26, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/EMF system, which will then send notification of such filing ("NEF") to all counsel of record.


_____*/s/ Joseph King*_____
Joseph King
VA Bar # 65632
King, Campbell, Poretz, Pllc
108 N. Alfred Street
Alexandria, VA. 22314
Phone:  703-683-7070
Facsimile:  703-652-6010
jking@kingcampbell.com